KATHY HORTON, Appellant, *v.*
RYAN FRITZ, Respondent.

No. 28216

July 15, 1997                              942 P.2d 134

---

[5]The Honorable Miriam Shearing, Chief Justice, did not participate in the decision of this appeal.

*Michael Paul Wood,* Las Vegas, for Appellant.

*Pico & Mitchell* and *F. Breen Arntz,* Las Vegas, for Respondent.

## OPINION

By the Court, MAUPIN, J.:

Appellant Kathy Horton ("Horton") was injured as a result of an incident that occurred during the early morning hours of November 1, 1992. She claims that she was leaning against a stationary automobile when the driver, respondent Ryan Fritz

("Fritz"), a seventeen-year-old minor, suddenly drove forward, causing her to fall and severely fracture her left arm. It is uncontested that Fritz left the scene of the accident without rendering aid or procuring medical assistance.

Horton sued Fritz for negligence and lost at trial. She appeals, claiming that the district court erred by refusing to give her proposed jury instructions regarding the hit-and-run nature of the incident and for instructing the jury that Fritz's conduct was to be governed by a discrete standard of care applicable to minors. Horton also contends that the trial court's extrajudicial statements regarding settlement and the merits of the case created a litigation environment so hostile as to warrant reversal.

The facts of the case were vigorously contested. Horton claims that the incident took place at about 2:00 a.m. on the night in question after she noticed Fritz's car driving by her house in a suspicious manner. She had been drinking and observed the vehicle while she was sitting in a van outside her residence with her "boyfriend." Another occupant of Fritz's vehicle, Jamie Renshaw ("Renshaw"), was a friend of Horton's son and was known to Horton as such. When she recognized her son's friend, she thought they might be looking for her son or know his whereabouts. She then proceeded to Fritz's vehicle to inquire about her son and, receiving no response and growing frustrated, started to raise her voice. She also claims that she was leaning on the car during this confrontation when, suddenly and without warning, Fritz rolled up his window and accelerated away, throwing her to the ground. Horton claims that the car paused at the end of the block and drove away. Her friend immediately called for emergency assistance, which ultimately arrived and transported her to the hospital for treatment.

Fritz claims that he and his passengers were trying to find Horton's house between midnight and 12:30 a.m., when Horton came running and stumbling toward them while yelling and screaming. He further claims that she was hitting the side of his vehicle which, along with the nearby presence of Horton's boyfriend in the van, frightened him. On the advice of Renshaw, who was also frightened, Fritz pulled away. According to his testimony, it was then that Horton attempted to grab the side mirror and appeared to trip while running alongside the moving vehicle. At the end of the block, he paused to look back, at which time he observed Horton on her feet. He left assuming that she had sustained only minor injuries, that her boyfriend would provide necessary assistance, and that a return might result in a serious confrontation.

## DISCUSSION

At the conclusion of the evidence, the court refused to instruct

the jury that a violation of NRS 484.219[1] and 484.223,[2] the Nevada "hit-and-run" statutes, constituted negligence as a matter of law and that such violations would require the jury to simply move on to the issue of legal causation of the alleged injuries.

Ordinarily, evidence of leaving the scene of an accident without stopping to render aid or provide information is not probative as evidence of substantive liability for the accident itself. Rather it may be probative as an implied admission of fault or as

[1] Instruction No. A, which was based on NRS 484.219, read:

There was in force at the time of the occurrence in question a Nevada law which reads as follows:
The driver of any vehicle involved in an accident on a highway or on premises to which the public has access resulting in bodily injury to or the death of any person shall immediately stop his vehicle at the scene of the accident or as close thereto as possible, and shall forthwith return to and in every event shall remain at the scene of the accident . . . .
A violation of the law just read to you constitutes negligence as a matter of law. If you find that a party violated the law just read to you, it is your duty to find such violation to be negligence; and you should then consider the issue of whether that negligence was a legal cause of injury or damage to the plaintiff.

[2] Instruction No. B, which was based on NRS 484.223, read:

There was in force at the time of the occurrence in question a Nevada law which read as follows:
1. The driver of any vehicle [involved] in an accident resulting in an injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall:
(a) Give his name, address and the registration number of the vehicle he is driving, and shall upon request and if available exhibit his license to operate a motor vehicle to any person injured in such accident or to the driver or occupant of or person attending any vehicle or other property damaged by such accident;
(b) Give such information and upon request manually surrender such license to any police officer at the scene of the accident or who is investigating the accident; and
(c) Render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person.
2. If no police officer is present, the driver of any vehicle involved in such accident, after fulfilling all other requirements [set forth above] insofar as possible on his part to be performed, shall forthwith report such accident to the nearest officer of a police authority or of the Nevada Highway Patrol and submit thereto the information specified [herein].
A violation of the law just read to you constitutes negligence as a matter of law. If you find that a party violated the law just read to you, it is your duty to find such violation to be negligence; and you should then consider the issue of whether that negligence was a legal cause of injury or damage to the plaintiff.

evidence that the victim's injuries were exacerbated by delay in obtaining medical treatment. *See* Powell v. Doe, 473 S.E.2d 407, 413 (N.C. Ct. App. 1996) (holding that use of a penal statute as the standard for negligence per se is only appropriate when the hit-and-run driver's failure to stop and render aid either exacerbated the injury, resulted in unnecessary pain and suffering, or resulted in an avoidable death); *see also* Cheevers v. Clark, 449 S.E.2d 528, 530 (Ga. Ct. App. 1994).

Here, the trial court properly refused these instructions because the "hit-and-run" feature of the case had nothing to do with basic liability for the accident. Because no separate instructions were offered on the exacerbation or admission issues, we conclude that counsel did so in his tactical approach to the case.[3]

The court also rejected an instruction advising that leaving the scene of an accident would entitle the jury "to infer that the information which that party would have given at the scene would have been unfavorable to him." Horton sought this latter instruction on the implication that the unfavorable information would have involved Fritz's drinking. Because Fritz admitted to imbibing that evening, and because there was no contest in the evidence as to whether his driving had been affected thereby, the trial court properly exercised its discretion in refusing the proffered instruction. Horton also argues that the instruction should have been given under PETA v. Bobby Berosini, Ltd., 110 Nev. 78, 90, 867 P.2d 1121, 1128 (1994) (PETA I), which held that "the failure of a party to produce evidence on an issue peculiarly within his own knowledge raises an inference that the concealed information is unfavorable." The record does not confirm that the instruction was designed to facilitate an argument that Fritz should have been presumed to have concealed other information beyond his drinking prior to the incident. Thus, there was no further basis for reading the proposed presumption instruction to the jury.

Over Horton's objection, the judge read the following instruction on standard of care:

> A minor is not held to the same standard of conduct as an adult. He is only required to exercise the degree of care which ordinarily is exercised by minors of like age, intelligence and experience under similar circumstances. It is for you to determine whether the conduct of the defendant was

---

[3]A hit-and-run instruction on the damage issue would have been properly refused because there was no evidence that Fritz's departure from the scene without reporting the incident or lending assistance caused a delay in obtaining medical treatment.

such as might reasonably have been expected of a minor of his age, intelligence and experience, acting under similar circumstances.

Horton contends that this instruction improperly lessened the standard of care by creating a separate, less rigorous, standard for minor operators of motor vehicles. The judge, in ruling on the instruction, noted that Fritz was not accused of violating the Nevada traffic code. He stated "[I] think the primary thrust of this accusation of negligence is his *judgment* under the circumstances of driving away in a manner that put someone in danger." (Emphasis added.)

Fritz argues that the instruction was designed to fit his theory of the case that a minor could reasonably act as he did in this confrontation with adults. He also argues that this instruction merely supplements the general standard of care instruction that was also read to the jury and which articulated the doctrine governing the operation of a motor vehicle by any driver regardless of age. We disagree.

The instruction of which Horton now complains improperly conflicts with, rather than supplements, the general instruction given on the standard of care. It unequivocally states, in general terms, that a minor is governed by a lesser standard of care in contravention of existing doctrine that all licensed drivers tested and approved for vehicular operation by the Nevada Department of Motor Vehicles are bound to comport with the same standards of conduct. Summerill v. Shipley, 890 P.2d 1042, 1044 (Utah Ct. App. 1995); *see also* Lemond Const. Co. v. Wheeler, 669 So. 2d 855, 869 (Ala. 1995) (Houston, J., dissenting).

We hold that an instruction couched in terms of duty was improper for the specific purpose of addressing Fritz's reaction to a confrontation with a potentially dangerous and antagonistic person.[4] To the extent that the defense wished to submit a theory of the case instruction on Fritz's alleged flight from the scene, the instruction should have simply indicated that persons are not required to remain at the scene of an accident when to do so

---

[4]The dissent contends that the instruction was proper because Fritz was not charged with any driving violation. This misapprehends the fundamental nature of the claims litigated below. Besides the "hit-and-run" allegations, Fritz was primarily accused of negligently pulling away from the scene while Horton was "leaning" on his vehicle. This clearly implicates the operation of a vehicle and the standard of care that applies to all licensed drivers. While the instruction was meant to address Fritz's reaction to the situation with which he was faced, the instruction went far beyond its stated purpose and obscured the general standard of care applicable to this particular negligence claim. Regardless of her apparent lack of credibility, Horton was entitled to have the case litigated under appropriate instructions.

would endanger themselves or others. Further, because the instruction appears to have been given in connection with the "hit-and-run" allegations, the instruction was rendered unnecessary by the court's refusal to give the negligence per se instructions on that issue.

Horton also complains that the trial judge threatened her counsel with NRCP 11 sanctions if the case was lost, that the judge advised the attorneys that he was fed up with spurious lawsuits, and that he believed he had the responsibility to ferret through cases and "disallow or discourage" cases without merit. After the verdict was read, a show cause hearing was ordered and conducted by the trial court on the question of NRCP 11 sanctions. These were denied.

Although the trial judge had the discretion to facilitate settlement under NRCP 16, and while there is no judicial conduct of record requiring reversal, we hereby advise the trial court that threats of Rule 11 sanctions were improper in the context of this case, especially if, as represented at oral argument, they may have been addressed to *both* parties. Further, although the plaintiff's case can, in retrospect, be considered to be quite marginal, Horton had the right to proceed to trial without being made subject to a threat of sanctions under NRCP 11.

Accordingly, we reverse and remand this action for a new trial.

SHEARING, C. J., and SPRINGER and ROSE, JJ., concur.

Young, J., dissenting:

I must respectfully dissent because I do not believe Horton's minimal prospects of prevailing on remand require a second and unnecessary trial.

The majority apparently reverses this case based solely on the following allegedly erroneous jury instruction:

> A minor is not held to the same standard of conduct as an adult. He is only required to exercise the degree of care which ordinarily is exercised by minors of like age, intelligence and experience under similar circumstances. It is for you to determine whether the conduct of the defendant was such as might reasonably have been expected of a minor of his age, intelligence and experience, acting under similar circumstances.

The majority opines that it was erroneous for the lower court to allow this instruction because "all licensed drivers tested and approved for vehicular operation by the [DMV] are bound to comport with the same standards of conduct." Majority, at 829

(citing *Summerill v. Shipley,* 890 P.2d 1042, 1044 (Utah Ct. App. 1995)). I respectfully submit that the majority's reliance on a provision in Nevada's motor vehicle code as the applicable standard of care in this case is misplaced because this case does not charge Fritz with any driving violation.

In *Summerill,* plaintiff sued a sixteen-year-old boy for negligence when he caused a four-car collision as he was entering traffic on a highway. The defendant requested an instruction on a minor's standard of care which the trial court refused to give. *Summerill,* 890 P.2d at 1044. The Utah Court of Appeals held that a minor operating a motor vehicle is held to the same standard of care as an adult and, therefore, affirmed the lower court's decision. *Id.* However, unlike *Summerill,* this case does not involve the violation of any traffic or driving provision. Rather, the facts giving rise to the instant matter involved a minor faced with the uncertain dangers of an irate, drunken woman and an unknown, potentially dangerous man sitting in a nearby van. Indeed, the contested instruction never mentions *driving.* Instead, it requires the jury to consider Fritz's overall *conduct* in determining whether Fritz was negligent when he continued driving forward while Horton yelled unintelligibly, pounded on the car, and held onto the sideview mirror.

Accordingly, I conclude that the trial court was correct in evaluating this case as possible negligence in Fritz's *judgment,* rather than Fritz's driving ability.

Even if the instruction were erroneous, I am unwilling to concede that the jury would have reached an entirely different result if it were given an instruction consistent with the majority opinion. I note that after a three-day trial, the jury deliberated only twenty-five minutes before returning a verdict in favor of Fritz.

The majority's opinion apparently reverses this case because the instruction used the legal phrase "standard of conduct." If use of this term of art was error, then pursuant to Nevada Rule of Civil Procedure 61,[1] I conclude that it was harmless error. This jury instruction, erroneous or otherwise, is not "inconsistent with substantial justice," nor does it "affect the substantial rights

---

[1]NRCP 61 provides:

[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for . . . setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

of the parties." NRCP 61. Therefore, I conclude that if any error occurred, it was harmless and does not require reversal.[2]

Accordingly, I write this dissent to express my belief that the allegedly erroneous jury instruction was not given in error. Additionally, even if it was incorrect, such an inconsequential error should not require reversal.

---

[2]Indeed, even the majority agrees that Horton is not credible. Majority, at 829 n.4. Therefore, I am puzzled as to why the majority insists on remanding this case to be relitigated when the only difference between the first and second trial will be to delete this very harmless jury instruction.